## ROBERT DENNISON
*vs.*
## CONNECTICUT GOOD HUMOR, INC., ET AL.

Superior Court      Fairfield County      File No. 64435

MEMORANDUM FILED JULY 17, 1942.

*FitzGerald, Foote & FitzGerald,* of New Haven, for the Plaintiff.

*Walter T. Walsh,* of New Haven, for the Defendant.

Memorandum of decision on appeal from action of Compensation Commissioner.

O'SULLIVAN, J. A claim for workmen's compensation having been denied, the plaintiff appealed to this court, and has alleged error on the Commissioner's part in his rulings on the motion to correct the finding, and in his conclusion that the injury for which compensation was sought did not arise out of and in the course of the plaintiff's employment.

The finding, as corrected by the Commissioner and this court, warrants the following running account of the events leading up to this litigation: The defendant is engaged in the business of selling a commodity known as "Good Humors", which are made of ice cream attached to sticks. These are sold by young men whom it employs, stationed at various points along the highways. The "Good Humors" are housed in containers and the young salesmen are known as container boys. On June 20, 1941, the plaintiff, a lad of 18 years, entered the defendant's employ as a container boy and was instructed in the technique of the company's style of salesmanship. The plaintiff was assigned to a location on White Street, Danbury, to which, by the terms of his employment, he was taken during the morning in one of the defendant's trucks operated by Murray Zeidenberg. In addition to this task, Zeidenberg was required to park here and there along a certain route to sell "Good Humors" carried in the truck. He was also required to call at the plaintiff's station each evening at six o'clock to replenish, if necessary, the latter's supply of "Good Humors." Then, at 11 o'clock he would pick up the plaintiff, collect such ice cream as was unsold and whatever receipts the plaintiff had in his possession from the sales made during the day and evening, and then the two would return to New Haven. The period of the plaintiff's employment commenced when he left the defendant's plant in New Haven and ended upon his return.

On the morning of June 30, 1941, with Zeidenberg at the wheel of the truck and the plaintiff as a passenger, they started for Danbury. While on the way, the plaintiff asked and received permission to drive the truck and, while so engaged, he ran into the rear of another vehicle headed in the same direction, as a result of which a bone in his arm was fractured and he was rendered incapacitated until October 18, 1941.

On May 1, 1941, he had obtained a driver's license and when he had first sought employment with the defendant, he had asked for a truck-driving job but an official of the company told him he was too young and inexperienced for such work. He understood why the company would not employ him as a driver and he knew he was violating instructions when he operated the truck on the day in question.

Further corrections of the finding cannot be made as the additions sought to be added are not admitted or undisputed facts, and the eliminations involve matters on which there was direct evidence or which may be justified by reasonable inferences.

During the course of oral argument, counsel for the defendant conceded that the plaintiff was not guilty of serious or wilful misconduct, nor did the Commissioner determine the case on any such theory. The simple and basic question involved is this: While the plaintiff was driving the truck, can the injury he sustained be legally held to have arisen out of and in the course of his employment?

A distinction must always be drawn between the doing, in a reckless or negligent manner, of a thing a workman is employed to do, and the doing of a thing altogether outside of and unconnected with his employment. A peril arising from performing the work he is required to do by the terms of his employment, even though recklessly or negligently done, is rightly a risk incident to his employment, but not so in the other case. It is not disobedience to instructions that precludes recovery, but the fact that what he was doing was not part of, or incidental to, what he was hired to do.

It makes no difference, it seems to me, whether the plaintiff was or was not instructed not to drive the truck, in the absence of a finding that no custom had arisen of which the employer was or of which it should have been aware whereby container boys were, on various occasions, permitted to drive the trucks in which they were being transported. The plaintiff's job was to sell "Good Humors." As incidental thereto was the transportation to Danbury and if, while Zeidenberg was driving, the plaintiff sustained an injury from a collision, it would be deemed one arising out of and in the course of his employment. *Johnson vs. Wiese*, 125 Conn. 238; *Swanson vs. Latham*, 92 id. 87; *Flanagan vs. Webster & Webster*, 107 id. 502; *Sala vs. American Sumatra Tobacco Co.*, 93 id. 82.

But, under the circumstances disclosed by the finding, the plaintiff, in operating the truck, placed himself as much beyond the sphere of his employment as he would have done, had he driven off the premises of his employer without waiting for Zeidenberg at all. The risk he met when the collision occurred was one of his own creation and was caused by his doing something he was not employed to perform. It was not, therefore, a risk that arose out of his employment. The authorities support this position. *Anno.* 23 A.L.R. 1161; 33 id. 1335; 119 id. 1409.

Where a brakeman and fireman on a locomotive exchanged positions, and in a collision the former was killed, compensation was denied. *Utah Copper Co. vs. Industrial Commission,* 62 Utah 33, 217 Pac. 1105. The same conclusion was reached where one was employed to shovel gravel and, to accommodate the driver of the team, exchanged work with him for a trip during which he was injured. *Modoc County vs. Industrial Accident Commission,* 32 Cal. App. 548, 163 Pac. 685. A similar result occurred where the plaintiff, employed to bear off heading from a heading machine, was permitted by a foreman to exchange jobs with one who had been hired to clean floors in the defendant's plant. *Bullard vs. Cullman Heading Co.,* 220 Ala. 143, 124 So. 200. To a like effect is *Whelan vs. Moore,* 43 Ir.L.T. 205, 2 B.W.C.C. (N.S.) 114, where a man employed by the owner of a canal boat as driver exchanged places with an employee engaged to steer and was subsequently drowned.

Instances, undoubtedly, may occur where a workman sustains a compensable injury while furthering his employer's interest but in the performance of an act not within the precise sphere of his employment. Such is to be found in *Hartz vs. Hartford Faience Co.,* 90 Conn. 539.

Each case, of course, has its own set of circumstances and each requires its own solution. For example, had the truck, while under the operation of Zeidenberg, sustained a blowout of one of its tires and had the plaintiff been injured while assisting in mounting a new tire, compensation ought to follow even though the plaintiff's work did not specifically cover the possibility of assisting in replacing tires.

On the other extreme, had the means of transportation to Danbury been by plane, and while in the air, had Zeidenberg,

the pilot, wished to doze off and requested the plaintiff, who knew nothing about flying, to take over the controls, it would be a courageous barrister, it seems to me, who would seek compensation for the injuries which inevitably would happen.

Then again, the situation might be vitally different had Zeidenberg suddenly become ill, as the plaintiff unsuccessfully endeavored to establish, and had he asked the plaintiff to drive in his stead. Emergencies, whether of greater or less significance, alter cases, and whenever compensation has been allowed in somewhat analogous cases, there will usually be found the element of 'an emergency, even though its degree is at times well-nigh insignificant.

But the instant case. furnishes no such persuasive facts. Here was a lad with a month-old operator's license burning a hole in his pocket and he sought the opportunity, as all youngsters do, to make use of it by operating a truck. This presents a picture much different from that found in the *Hartz* case.

The appeal is dismissed.