624 P.2d 545

**Ford WEBB, Plaintiff-Appellee,**

v.

**ARIZONA PUBLIC SERVICE COMPANY, Defendant-Appellant.**

**No. 4545.**

Court of Appeals of New Mexico.

Jan. 15, 1981.

Byron Caton, Tansey, Rosebrough, Roberts & Gerding, P. C., Farmington, for defendant-appellant.

Wade Beavers, Beavers & Dean, Farmington, for plaintiff-appellee.

OPINION

SUTIN, Judge.

Defendant appeals from a workmen's compensation judgment in which the trial court determined that plaintiff was totally disabled, caused by an accident that occurred on December 6, 1978. Plaintiff lived in Farmington, New Mexico and worked for defendant in the Farmington area for the past 16 years. We affirm.

Defendant attacks finding No. 2, which reads: "The plaintiff because of said injuries and since said date has been totally disabled." It also claims that the doctrine of full faith and credit and res judicata applies by reason of a decision in the case of *Ford Webb v. Arizona Public Service Company* before the Industrial Commission of Arizona. Finally defendant claims that the trial court abused its discretion by failing to grant a plea in abatement for a continuance of this case.

"We have stated innumerable times that the spirit of the Workmen's Compensation Act flows in the direction of the workman and toward his protection. The compensation carrier [or employer] should not seek technical, circuitous routes to avoid its responsibilities." *Perea v. Gorby*, 94 N.M. 325, 610 P.2d 212, 216 (Ct.App.1980). See also, *Moorhead v. Gray Ranch Co.*, 90 N.M. 220, 561 P.2d 493 (Ct.App.1977), Sutin, J., specially concurring.

■ The trial court has the final say about the facts if there is substantial evidence or any reasonable inference to be drawn from the evidence to support the facts made by the trial court. It must determine the facts from what it sees and hears, from the gestures and other conduct of the testifying witnesses as well as from their words. What the court thinks about the facts is all that matters.

■ The medical testimony of an orthopedic surgeon was taken before a hearing officer of the Industrial Commission of Arizona on September 4, 1979, in Farmington, New Mexico. The surgeon testified that the accident of December 6, 1978 aggravated a previously existing problem that plaintiff had since he first saw him in 1972, a slow deterioration over the past six years. This one last insult incapacitated him. The hearing officer erroneously sustained an objection to the question whether the surgeon had an opinion as to whether plaintiff was able to return to the work he was doing at the time of the accident. The surgeon was not even allowed to state whether he had an opinion. Other similar objections were sustained. The surgeon did express an opinion that plaintiff could not do any type of heavy physical work at the time of the deposition, the kind of work he was doing at the time of his injury. This is substantial evidence that plaintiff was totally disabled since the date of the accident, as found by the trial court.

With reference to the application of the doctrines of "full faith and credit" and "res judicata," the chronology of events in this case is as follows.

December 6, 1978: Accident.

March 5, 1979, notice was mailed to plaintiff by the Industrial Commission of Arizona in which a check for $1,608.34 was enclosed that covered time lost commencing 12–19–78 through 12–28–78 and 1–12–79 through 2–28–79. If plaintiff did not request a hearing within 60 days after March 5, 1979, the notice was final.

April 12, 1979, notice was mailed to plaintiff that temporary compensation and active medical treatment terminated on 3–30–79 and injury resulted in no permanent disability with the same 60 day finality.

May 22, 1979, plaintiff requested a hearing.

July 17, 1979, plaintiff filed the instant workmen's compensation claim in San Juan County.

July 23, 1979, the parties were given notice that a hearing in the Arizona case was set on September 4, 1979, in Farmington, New Mexico.

August 16, 1979, defendant moved to abate the New Mexico case.

September 4, 1979, a formal hearing was held in Farmington, New Mexico before a

hearing officer of the Industrial Commission of Arizona and the testimony of plaintiff and the orthopedic surgeon was taken and reported.

September 20, 1979, a decision was rendered by the presiding hearing officer. It found that plaintiff was not entitled to permanent disability benefits and that his condition became medically stationary requiring no further treatment on March 30, 1979.

November 30, 1979, plaintiff requested the Court of Appeals of Arizona to review the decision of the Industrial Commission.

January 8, 1980, defendant moved the trial court in the instant case for a continuance.

January 11, 1980, trial of the New Mexico case was held.

January 15, 1980, judgment for plaintiff was entered.

February 12, 1980, defendant filed notice of appeal.

Defendant says that the question which this Court must decide is whether the "Judgment" entered in the Arizona hearing of September 20, 1979, and affirmed on November 30, 1979, is a final "Judgment" and thus res judicata of the issues which were later decided in New Mexico on January 15, 1980. Defendant contends that the same hearing between the same parties involving the same issues in the compensation case in Arizona precluded a hearing on the same issues in the same case between the same parties in New Mexico.

Section 52–1–65, N.M.S.A. 1978 of the Workmen's Compensation Act reads in pertinent part:

> The payment or award of benefits under the workmen's compensation law of another state ... to an employee ... otherwise entitled on account of such injury ... to the benefits of this act *shall not be a bar to a claim for benefits under this act* .... [Emphasis added.]

Section 52–1–66 provides a method for an out-of-state employer to "be deemed to have secured the payment of compensation under this act."

"Both statutes ... contemplate that New Mexico benefits are to be paid; that benefits from another state do not control the permissible recovery in New Mexico." *Burns v. Transcon Lines*, 92 N.M. 791, 793, 595 P.2d 761 (Ct.App.1979).

It is reasonable to presume that in enacting § 52–1–65, the legislature intended to avoid the complexities involved in the application of "full faith and credit" and "res judicata" in workmen's compensation cases. The "race to the courthouse" between employers and employees in different states has ended. Defendant immediately ran to the Industrial Commission of Arizona because the benefits paid to a workman in Arizona are far lower than those awarded in New Mexico.

Defendant relies on New Mexico cases decided prior to the enactment of § 52–1–65 in 1975. *Chapman v. John St. John Drilling Company*, 73 N.M. 261, 387 P.2d 462 (1963); *Wise v. Wise*, 55 N.M. 461, 235 P.2d 529 (1951) (a divorce case); *McDonald v. Padilla*, 53 N.M. 116, 202 P.2d 970 (1948) (a quiet title suit). See also, *La Rue v. El Paso Natural Gas Co.*, 57 N.M. 93, 254 P.2d 1059 (1953). *Chapman* and *La Rue* both held that the New Mexico court was free under the full faith and credit clause to hear and determine the claim under New Mexico's Workmen's Compensation Law. *Chapman* involved a pending appeal from the award of the Texas Industrial Accident Board. *La Rue* involved denial of compensation by the Arizona Industrial Commission under the Arizona Workmen's Compensation Act.

*La Rue* and *Chapman* discussed the cases of *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149, 150 A.L.R. 413 (1947) and *Industrial Comm'n v. McCartin*, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140, 169 A.L.R. 1179 (1947). Both were involved with the application of the full faith and credit clause to workmen's compensation cases. *Magnolia* held that a final foreign award was res judicata and entitled to full faith and credit in a subsequent proceeding under the workmen's compensation statute of another state,

thereby precluding recovery in the second state even though local law permitted a larger recovery. *McCartin* came to the opposite conclusion by distinguishing, but not overruling. *Magnolia*. *McCartin* laid down as a test for applying the full faith and credit doctrine of *Magnolia*, the question whether the state first awarding compensation either by "unmistakable language" of a statute or by judicial decision, prohibited an employee from receiving relief under the laws of another state.

We are dealing here with highly controversial subjects where honest differences of opinion are almost certain to occur. Each case involves a clash between the policies of two sovereign states. The question to decide is not the policy we prefer; it is whether the two conflicting policies can somehow be accommodated. In *La Rue*, Justice McGhee said:

. . . Perhaps it is not too much to hope the Court which rendered the Magnolia and McCartin opinions will, when the opportunity is presented, clarify them, or perhaps state an easily understood rule to be applied in such cases. [Id. 57 N.M. 97, 254 P.2d 1059.]

This opportunity was presented to the Supreme Court of the United States in *Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980). Unfortunately, the Supreme Court did not comply with Justice McGhee's hope. A majority of the court did *not* overrule *Magnolia*. A plurality did. A majority agreed that *McCartin*, rather than *Magnolia*, was controlling between the two precedents. Six members of the court agreed that *McCartin* was analytically indefensible. The remaining three members of the court conceded that it rested "on questionable foundations." The majority believed that *McCartin* represented an unwarranted delegation to the states of the Supreme Court's responsibility for the final arbitration of full faith and credit questions.

Nonetheless, seven members of the court agreed that a second, supplemental award of benefits to the worker under the District of Columbia's Workmen's Compensation Act, in addition to the award he received under the Virginia Workmen's Compensation Act, was not precluded under the Full Faith and Credit Clause of the United States Constitution as implemented by 28 U.S.C.S. § 1738. This section provides that the laws of the states, territories, or possessions of the United States are to have "the same full faith and credit in every court within the United States and its territories and possessions as they have in the courts of the state, territory or possession from which they are taken."

Unless we are confused by the confusion in *Thomas*, we are yet bound by the *Magnolia-McCartin* doctrines of full faith and credit in workmen's compensation cases.

In *Thomas*, plaintiff, a resident of the District of Columbia and hired there, was injured in Virginia. He obtained approval by the Industrial Commission of Virginia of an agreement as to payment of benefits of $62.00 per week. Three years later, plaintiff notified the Department of Labor of his intention to seek compensation under the District of Columbia Act. He did. Plaintiff was then awarded permanent total disability benefits payable from the date of his injury with a credit for the amounts previously paid under the Virginia award. This award was ultimately upheld in *Thomas*.

*Thomas* differs from the instant case in five respects: (1) In *Thomas*, the workman initially sought compensation payments in Virginia. In the instant case, defendant initially sought the right to make payments in Arizona. (2) In *Thomas* the workman sought additional compensation in the District of Columbia. In the instant case, plaintiff sought full compensation under the New Mexico Workmen's Compensation Act. (3) In *Thomas*, the two jurisdictions shared a common interest with no danger of any significant conflict because the allowance of successive awards would fully provide the workman with adequate compensation. In the instant case, a conflict does exist over the amount of compensation benefits plaintiff would recover. A successive additional award was not sought by plaintiff. (4) In *Thomas*, an agreement between

the workman and employer was entered into and approved by the Virginia Industrial Commission. In the instant case, no agreement was made in Arizona. (5) In *Thomas*, the ultimate issue was whether Virginia's interest in the integrity of its tribunal's determination foreclosed a second proceeding to obtain a supplemental award in the District of Columbia. In the instant case, the ultimate issue is whether New Mexico can disregard any determinations made by the tribunals of Arizona, a state where an employer can initiate compensation proceedings before an industrial commission over the objection of the workman, but cannot do so in New Mexico.

In New Mexico, *Chapman* adopted the *McCartin* doctrine which limited *Magnolia* to a great extent. It held that the Texas Workmen's Compensation Act did not make its award so conclusive of all rights to compensation as to prevent relief under the laws of another state because of the Full Faith and Credit Clause inasmuch as an appeal pending in Texas, like that pending in Arizona in the instant case, prevents its operation as res judicata, thus allowing the district court in New Mexico to hear and determine the compensation claim under the New Mexico Workmen's Compensation Law.

We now turn to 4 Larson's Workmen's Compensation Law, § 85.20 (1979) to learn the *Restatement's* view of the *Magnolia-McCartin* rule. It states:

> ... The first amendment of the *Restatement* [Restatement, Conflicts of Law, 1948 Supplement] designed to bring it into harmony with these decisions adopted the interpretation by using the following language:
>
> > "Award already had under the Workmen's Compensation Act of another state will not bar a proceeding under an applicable Act, under the Act where the award was made was designed to preclude the recovery of an award under any other Act, but the amount paid on a prior award will be credited on the second award."

The *Restatement* Second [Section 182] streamlines the statement of the rule to the following concise version:

> "Relief may be awarded under the workmen's compensation statute of a State of the United States, although the statute of a sister state also is applicable."

■ Comment (b) of Section 182 entitled "Effect of previous award," states:

> The Supreme Court of the United States has held that an award made under the workmen's compensation statute of a State of the United States will not bar a proceeding against the same person under the applicable statute of a sister State, unless the first State has declared by statute or by court decision that its remedy, if pursued to an award, should be exclusive.

This comment states the rule of law in New Mexico.

■ Paraphrasing *Thomas*, although an Arizona court is free to recognize the perhaps paramount interests of another state by choosing to apply that state's law in a particular case, the Industrial Commission of Arizona does not have that power. Its jurisdiction is limited to questions arising under the Arizona Workmen's Compensation Act. Typically, a workmen's compensation tribunal may only apply its own state's law. In this case, the Arizona Commission could and did establish a full measure of plaintiff's rights under Arizona law, but it neither could nor purported to determine his rights under the law of New Mexico. Full faith and credit must be given to the determination that the Arizona Commission had the authority to make; but by a parallel of reasoning, full faith and credit need not be given to a determination that it had no power to make. *Since it was not requested, and had no authority, to pass on plaintiff's rights under New Mexico law, there can be no constitutional objection to a fresh adjudication of those rights.*

In states with overlapping jurisdiction, we should not hesitate to give effect to the more generous compensation policies of New Mexico when the workman in the first

instance selects the most favorable forum. Especially is this so when in Arizona compensation proceedings are initiated informally, without the aid of counsel, and, more so, when the employer races to the Commission to give notice to a workman before a workman can select his own forum with the aid of counsel. The Arizona allowance scarcely amounts to a "recovery" in the sense of giving full compensation for loss. The Full Faith and Credit Clause should not be construed to preclude a workman from initially selecting the most favorable forum. Arizona did not intend that its award would bar plaintiff from recovering compensation under New Mexico law. Our compensation act was passed in the interest of the general welfare of the people in New Mexico. It is extremely doubtful whether Arizona has the power by any legal device to preclude New Mexico from granting to its own residents, employed within its own borders, that measure of compensation for occupational injuries which it deems advisable. To hold otherwise is to grant Arizona the power to nullify a New Mexico statute which gives the beneficial protection of workmen's compensation to an injured workman who is a resident of New Mexico and employed here. The Full Faith and Credit Clause does not give sanction to such control by one state of the internal affairs of another.

*McCartin* concluded:

Since this Illinois award is final and conclusive only as to rights arising in Illinois, Wisconsin is free under the full faith and credit clause to grant an award of compensation in accord with its own laws. [330 U.S. 630, 67 S.Ct. 890.]

Likewise, we so conclude in the instant case. Despite the Arizona award, we affirm the award of compensation granted under New Mexico law.

Defendant's final contention that the trial court erred in failing to continue or abate the matters pending before the New Mexico courts until resolution of the Arizona case is frivolous.

Plaintiff is awarded an attorney fee of $2,500.00 for services rendered in the ap-

peal. Defendant shall pay the costs of this appeal.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ and WALTERS, JJ., concur.